NOT DESIGNATED FOR PUBLICATION

No. 124,507

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

TOMMY JENE AGUILAR,
*Appellant.*

MEMORANDUM OPINION

Appeal from Finney District Court; CHRISTOPHER D. SANDERS, judge. Opinion filed November 4, 2022. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Tamara S. Hicks*, assistant county attorney, *Susan Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., WARNER and COBLE, JJ.

PER CURIAM: After Tommy Jene Aguilar pleaded guilty to one count of aggravated burglary and one count of aggravated battery the district court sentenced him to 118 months in prison but then granted a motion for a dispositional departure, suspended the prison sentence, and ordered 36 months of probation. About seven months later, the State moved to revoke Aguilar's probation based on two curfew violations, failure to report for an office visit, and contacting the victim of the crimes underlying his original sentence. The district court found Aguilar violated all four terms of his probation, so it revoked his probation and imposed his 118-month sentence. Aguilar

appeals, arguing that the district court acted unreasonably because his violations were merely "technical." Finding no abuse of discretion by the district court, we affirm.

*Factual and Procedural Background*

Aguilar pleaded guilty to aggravated battery and aggravated burglary in case number 2020 CR 31. The district court found Aguilar guilty on both counts. His convictions arose from Aguilar's entering K.F.'s apartment and attacking her. He lived with K.F. at the time.

At the sentencing hearing the court imposed a 75-month sentence for the aggravated burglary conviction and a 43-month sentence for the aggravated battery conviction. The court ordered the sentences to run consecutive, leading to a 118-month prison sentence. It then granted Aguilar's motion for a dispositional departure, suspended Aguilar's prison sentence, and ordered 36 months' probation.

Aguilar also pleaded guilty to probation violations from a separate case—number 2018 CR 387. One of those violations was contacting K.F. in violation of a no-contact order. The court found Aguilar guilty, revoked his probation, and ordered him to serve the rest of his sentence in that case.

One of Aguilar's probation conditions in 2020 CR 31 was that he would have no contact with K.F. But in December 2020, Aguilar moved to modify that condition. At the hearing on that motion, K.F. testified that she did not feel unsafe, that Aguilar had changed while incarcerated, and that his new sobriety would prevent future violence. She was worried about his well-being following his release from prison because he did not have any friends or family that remained in contact with him. Aguilar had helped her out financially and it was hard to get by without his assistance. K.F. also explained that she had medical issues and Aguilar could help her if something happened.

On cross-examination, K.F. admitted that Aguilar had been arrested for domestic violence toward her two or three other times before his arrest in 2020 CR 31. And Aguilar was under a no-contact order for K.F. at the time of his 2020 convictions.

The district court partially granted the motion, allowing contact on the conditions that Aguilar and K.F. did not cohabitate or share a mailing address. But the district court ordered that "[c]ontact between Tommy Aguilar and [K.F.] is ultimately at the discretion of the Community Corrections officer."

In March 2021, the State moved to revoke Aguilar's probation, alleging four probation violations: contact with the victim, failure to report for an office visit, and two curfew violations. At the evidentiary hearing in September 2021 the State called McKenzie Haar-Becker, Aguilar's probation supervisor. She testified that Aguilar wore an electronic monitoring device that gave her Aguilar's location and an associated timestamp, and that Aguilar's probation terms required him to be at his listed residence from 12 a.m. to 6 a.m. Haar-Becker then explained the four violations.

The first curfew violation occurred on March 20, 2021, when Aguilar was in a Taco Bell drive-through from 12:05 a.m. to 12:16 a.m. The second curfew violation occurred when Aguilar was near two hotels between 8:24 p.m. on March 21 and 6:16 a.m. the following morning. Aguilar did not have permission to be at those locations after curfew. Haar-Becker admitted that she was not sure how accurate the monitoring devices were.

The third probation violation occurred earlier on March 10, 2021, when Aguilar failed to meet with Haar-Becker for a scheduled office visit. Haar-Becker called Aguilar the day after and Aguilar apologized for forgetting the appointment.

Fourth, Haar-Becker testified that Aguilar violated the no-contact order with K.F. K.F. had called her in early February 2021 and had left a voicemail explaining that she and Aguilar had ended their relationship around Christmas. K.F. was planning to seek a protection from abuse (PFA) order against Aguilar because he had been coming to her workplace and calling her nonstop. She also explained that Aguilar had drug dealers calling her number asking about money that Aguilar owed them. But five days later, K.F. left another voicemail saying she wanted to continue to contact Aguilar and that the situation had "settled down." A few days after that second voicemail, Haar-Becker informed Aguilar that he could no longer have any contact with K.F.

Haar-Becker later learned that Aguilar had contact with law enforcement and the court took judicial notice of case 21 CR 109, which included allegations that Aguilar had contacted K.F. after Haar-Becker had told him not to do so. And Haar-Becker's affidavit in support of the probation violations showed law enforcement told her that K.F. had sought a PFA order against Aguilar on March 11, 2021.

In April 2021, Haar-Becker received an email from K.F. that included, as an attachment, a signed Motion to Dissolve a Final Order of Protection. It included a two or three sentence paragraph asking the court to dissolve a final order of protection. The paragraph shared that K.F. was "under intense pressure from family and friends and coworkers to proceed with the order and she truly did not want the order." Haar-Becker conceded on cross-examination that the email showed K.F. waffled on whether she wanted to see Aguilar.

Crystal Coronado testified for Aguilar. Coronado grew up with Aguilar and their families had been friends for years. Coronado testified that she had told Aguilar's probation officer that K.F. had told her that K.F. was lying to get Aguilar sent to jail. Though Coronado initiated contact, K.F. ultimately reached out to her hundreds of times from December 2020 through February 2021.

The court found that Aguilar violated the terms of his probation as alleged by the State. Aguilar had contacted K.F. despite the probation officer's order to the contrary, and the court's previous order had made clear that the probation officer was in charge of contact decisions. Aguilar also violated probation by missing an appointment with his probation officer, by being in the Taco Bell drive-through after curfew, and by being away from his residence for an entire night without informing his probation officer. Though the court might have considered things differently had these violations occurred alone, each violation was part of a whole.

After arguments about the potential disposition, the court revoked Aguilar's probation, imposed his 118-month sentence, and then denied Aguilar's motion to modify the sentence to 36 months.

Aguilar timely appeals.

*Did the District Court Abuse Its Discretion by Revoking Aguilar's Probation?*

Aguilar argues that the district court abused its discretion by revoking his probation and ordering him to serve his original 118-month prison sentence because all four probation violations were "technical" violations.

This court reviews a district court's decision to revoke an offender's probation for an abuse of discretion. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). "A court abuses its discretion if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; (3) or is based on an error of fact." 315 Kan. at 328. Aguilar bears the burden of establishing an abuse of discretion. 315 Kan. at 328.

Aguilar does not contend that the district court's decision is based on an error of fact. Rather, he agrees that he committed four probation violations alleged by the State.

5

Aguilar violated a no-contact directive from his probation officer, missed a scheduled meeting with his probation officer, and had two curfew violations.

Nor does Aguilar contend that the district court's decision was based on an error of law. Rather, he concedes that the district court had the authority to revoke his probation without first ordering intermediate sanctions. See K.S.A. 2019 Supp. 22-3716(c)(7)(B); *State v. Coleman*, 311 Kan. 332, 337, 460 P.3d 828 (2020).

Aguilar's sole argument is that his probation violations were merely technical and that prison should be reserved only for violent offenders who leave the court with no less costly choice. Citing law review articles, Aguilar argues the district court should have imposed a jail sanction instead of his prison sentence.

This court is, however, bound by the Legislature's directives in K.S.A. 2019 Supp. 22-3716, rather than by academic opining. And this policy issue is not for the courts but for the Legislature. As another panel of our court has stated: "Although we appreciate Crenshaw's academic research on the probation's relationship to drug abuse, the issue whether imprisonment should be reserved only for violent offenders is an issue of public policy that the Legislature is best equipped to determine." *State v. Crenshaw*, No. 121,795, 2020 WL 6930600, at *2 (Kan. App. 2020) (unpublished opinion).

True, Aguilar's violations were "technical," as defined in *State v. Brown*, 51 Kan. App. 2d 876, 880, 357 P.3d 296 (2015): "An act that violates probation conditions but isn't otherwise unlawful is a technical violation, while an act that violates probation conditions but is otherwise unlawful is a substantive violation." But as that case explained, just because a probation violation is only a "technical" one does not mean it is unimportant. 51 Kan. App. 2d at 880. One of Aguilar's violations was because he contacted K.F. against his probation officer's directive, and the district court recognized a pattern of his doing so.

6

A district court acts unreasonably if no reasonable person would have taken its view. This means that Aguilar has the burden to show that no other judicial officer would come to the same conclusion in a comparable situation. Having examined the record, we cannot find that no reasonable person would have revoked Aguilar's probation based on his four violations. Taken together, Aguilar's curfew violations, the missed meeting, and ignoring his probation officer's directive to not contact K.F. suggest a broad disregard for the probation requirements and a failure to appreciate the court's leniency when it granted Aguilar's motion for a dispositional departure.

Affirmed.